IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACKIE ROBINSON, <br><br> Plaintiff, <br><br> v. <br><br> ILLINOIS DEPARTMENT OF HUMAN SERVICES d/b/a THE ELISABETH LUDEMAN CENTER, <br><br> Defendant. | Case No. 22-cv-00889 <br><br> Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jackie Robinson ("Robinson") brings this suit against Defendant Illinois Department of Human Services ("IDHS") d/b/a The Elisabeth Lundeman Center for failure to accommodate his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101, *et seq*. IDHS moves for summary judgment. [54] [55] [56] [57]. For the reasons stated below, IDHS's motion for summary judgment [54] [55] [56] [57] is granted.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts

1

are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id*.

## BACKGROUND[1]

IDHS employed Robinson at its Elisabeth Ludeman Center ("ELC") facility as a Mental Health Technician ("MHT") Trainee from October 6, 2019 to August 4, 2020. [54-2] at ¶¶ 1-2. As an MHT Trainee, Robinson's job responsibilities included: support of individuals including with bathing, toileting, dressing, eating and oral hygiene, management of maladaptive behaviors, injury prevention and injury reporting;

---

[1] The facts are taken from the IDHS's Rule 56.1 statement of facts [54-2] and Robinson's statement of additional facts [66] and are undisputed unless otherwise noted.

2

supervising and escorting individuals during activities; basic housekeeping assignments; and other duties. *Id.* at ¶ 4.

Robinson was diagnosed with hypertension in 2014 and began taking blood pressure medication at that time. [66] at ¶ 1. In late April 2020, Robinson contracted COVID-19 and spent three days in the hospital. [66] at ¶ 8. Robinson last worked at ELC before April 26, 2020, and did not return to work. [54-2] at ¶ 12. Robinson was still in Trainee status when he contracted COVID-19, therefore he was not eligible for medical leave from IDHS. *Id.* ¶ 11. On May 27, 2020, Robinson provided IDHS with a note from his doctor which explained that Robinson had contracted COVID-19 and developed pneumonia, tachycardia, uncontrolled blood pressure and renal insufficiency. [66] at ¶ 11. The doctor's note stated that Robinson should be excused from work from April 26 to June 14, 2020. *Id.* The doctor's note explained that Robinson's pre-existing health condition placed him at a higher risk of complications if he were to contract COVID-19 again, therefore, Robinson should be given a work assignment to avoid exposure to COVID-19 in order to return to work. *Id.*

On June 9, 2020, Robinson submitted a request for an alternate work assignment to IDHS. [54-2] at ¶ 15. Robinson included the May 27 doctor's note with his request. [66] at ¶ 13. On June 16, 2020, IDHS denied Robinson's request because the medical documentation provided was not sufficient to meet the criteria for a modified or alternative work assignment. [54-2] at ¶ 16. On July 9, 2020, Robinson submitted a Reasonable Request for Accommodation and attached the May 27 doctor's note. [66] at ¶ 16. On July 13, 2020, Akia Harper ("Harper"), an ELC human

3

resources associate, emailed Robinson to advise him that he had not completed the first page of the reasonable accommodation request form. [54-2] at ¶ 20; [66] at ¶ 17. Robinson responded to Harper that same day and emailed her a completed request form. [54-2] at ¶ 21; [66] at ¶ 18.

Robinson's request for reasonable accommodation stated that the specific accommodation he was seeking was a "[r]econsideration of alternate work assignment." [58] (Defendant's Exhibit A, Part III) at 344. The request form asked for alternative accommodations, to which Robinson responded, "[p]resently there are not any working condition[s] that will limit my exposure to COVID-19." *Id.* The request form also asked for "[s]pecific essential function(s) of your job which you are unable to perform without a reasonable accommodation," to which Robinsons responded, "I can't be in contact with residents or coworkers due to extended exposure." *Id.* The request form also asked "[w]hy is the accommodation necessary to perform the essential job functions," to which Robinson responded "[t]here are no current accommodation[s] that can be provided at the facility that will keep me safe." *Id.*

On July 14, 2020, IDHS denied Robinson's verbal request for an extension of his COVID-19 related paid personal days. [54-2] at ¶ 23. On July 27, 2020, IDHS informed Robinson that his request for medical leave was denied and that he was expected to return to work by August 3, 2020, or, if he did not intend to return to work, to indicate in writing his intent to resign, stating the reason and effective date of resignation. *Id.* at ¶¶ 22, 24. The July 27 notice stated that it was Robinson's

4

responsibility to contact IDHS regarding the action he wished to take prior to August 3, 2020. *Id.* at ¶ 25.

On July 28, 2020, IDHS denied Robinson's request for reasonable accommodation because it was unable to provide an alternative work assignment outside of the ELC facility and therefore was unable to accommodate Robinson's specified request. [54-2] at ¶ 26; [66] at ¶ 22. Robinson was aware that if he did not return to work on August 3, 2020, or contact IDHS prior to August 3, 2020, he would be terminated. [54-2] at ¶ 27. On July 29, 2020, Robinson emailed IDHS about his denial of leave and his request for a reasonable accommodation. [66-4] at 2. Robinson voiced concerns about limited PPE in April 2020 and lack of testing of employees for COVID-19. *Id.* Robinson also stated that any further communication should include his newly retained lawyer. *Id.* IDHS terminated Robinson's employment on August 4, 2020, because he did not return to work or contact IDHS. [54-2] at ¶ 29; [66] at ¶ 24.

Robinson testified that if IDHS had issued more substantial PPE and implemented protective procedures in response to the COVID-19 pandemic, he would have discussed those measures with his doctor to determine whether they would allow him to return to work. [66] at ¶ 26. Prior to Robinson's termination in August 2020, IDHS required all MHT's to use updated PPD and updated COVID-19 safety protocols. [54] at ¶ 36.

## ANALYSIS

I.  **ADA Failure to Accommodate**

To establish a claim for failure to accommodate under the ADA, Robinson must show that: (1) he is a qualified individual with a disability; (2) IDHS was aware of his disability; and (3) IDHS failed to reasonably accommodate his disability. *Schoper v. Bd. of Trustees of W. Illinois U.*, 119 F.4th 527, 532 (7th Cir. 2024) (quoting *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 682 (7th Cir. 2014)). A "qualified individual" means "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.A. § 12111(8); *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 480 (7th Cir. 2017). Reasonable accommodations "may include," among other things, "reassignment to a vacant position" or "appropriate adjustment or modifications of … training materials or policies." § 12111(9).

"Whether a requested accommodation is reasonable or not is a highly fact-specific inquiry and requires balancing the needs of the parties." *A.H. by Holzmueller v. Illinois High Sch. Assn.*, 881 F.3d 587, 594 (7th Cir. 2018) (quoting *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002)). "[A]n accommodation is unreasonable if it imposes significant financial or administrative costs, or it fundamentally alters the nature of the program or service." *Id.* "If the proposed accommodation does not make it possible for the employee to perform his job, then the employee is not a 'qualified individual' as that term is defined in the ADA." *Severson*, 872 F.3d at 481.

IDHS does not dispute that Robinson has a disability. *See e.g.*, [57]. Robinson argues that IDHS failed to reasonably accommodate his disability by: (1) denying his

6

request for a modified or alternative work assignment; and (2) failing to engage in an interactive process to identify alternate reasonable accommodations. [65] at 9-11.

### A. Alternate Work Assignment

Robinson argues that IDHS failed to accommodate him by denying his request for an alternative work assignment. [67] at 9. Robinson's argument fails for two reasons. First, because the specific accommodation Robinson requested would make it impossible for him to do his job, he would not be a qualified individual under the ADA. Second, Robinson failed to establish that a vacant position was available for IDHS to reassign him to.

#### i. Qualified Individual

"A 'reasonable accommodation' is one that allows the disabled employee to 'perform the essential functions of the employment position.'" *Severson*, 872 F.3d at 481 (quoting § 12111(8)). "If the proposed accommodation does not make it possible for the employee to perform his job, then the employee is not a 'qualified individual' as that term is defined in the ADA." *Id.*

The parties agree that Robinson's duties as an MHT at ELC included supporting ELC residents with daily living activities including bathing, toileting, dressing, and eating, as well as supervising residents during activities including medical events and appointments off facility grounds. [54-2] at ¶ 4. Robinson requested an alternate work assignment as a reasonable accommodation, stating that he could not be in contact with residents or coworkers and that there was no

7

accommodation that could be provided at the ELC facility that could keep him safe. [58] (Defendant's Exhibit A, Part III) at 344.

Robinson argues that he is a qualified individual because he could have performed the essential functions of his position "had Defendant engaged Plaintiff in an interactive process after he requested a reasonable accommodation, where Defendant could have advised Plaintiff of any new safety protocols it had implemented and new PPE it began issuing while Plaintiff was on leave." [67] at 9. But Robinson's reasonable accommodation request makes no mention of safety protocols or PPE. *See* [58] (Defendant's Exhibit A, Part III) at 344. Robinson's reasonable accommodation request states that he cannot be in contact with residents or coworkers, and states that no accommodation could be provided at the ELC facility that would keep him safe. *Id.*

Robinson's proposed accommodation of an alternate work assignment which would keep him out of contact with ELC residents would make it impossible for him to perform the essential functions of an MHT. Robinson therefore would not be a qualified individual under the ADA and IDHS did not fail to accommodate him by denying his specific request for an alternate work assignment.

### ii. Vacant Position

An employer may have to reassign an employee to a vacant position as a reasonable accommodation under the ADA. *Severson*, 872 F.3d at 482; § 12111(9)(B). However, this duty extends only to vacant positions, and an employer is not required to create a vacancy to reassign an employee with a disability. *Dunderdale v. United*

8

*Airlines, Inc.*, 807 F.3d 849, 856 (7th Cir. 2015) (quoting *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996)). "It is the employee's burden to demonstrate that a vacant position exists." *Id.* (citing *Jackson v. City of Chicago,* 414 F.3d 806, 813 (7th Cir. 2005)). The employee "must demonstrate that a vacant position exists at the time of the adverse employment decision." *Id.* (citing *McCreary v. Libbey–Owens–Ford Co.,* 132 F.3d 1159, 1165 (7th Cir.1997)).

The only evidence Robinson provides regarding whether a vacant position existed at the time of his termination is a declaration in which Robinsons states:

> I believe that I could have been given a reassignment to a vacant position. For instance, other MHT's had previously been reassigned to full time positions involving food preparation and delivery out of the central food preparatory building or in the office.

[66-1] at ¶ 15. Whether other MHT's were reassigned to other positions is not relevant to whether IDHS had a vacant position available at the time of Robinson's termination for Robinson to be reassigned to. Despite having the benefit of discovery in this litigation, Robinson fails to provide evidence that a vacant position was available. *See Fuller v. McDonough*, No. 19 CV 1325, 2022 WL 2291224, at *10 n.27 (N.D. Ill. June 24, 2022) ("the discovery process in this litigation was [plaintiff]'s opportunity to find out whether a vacancy existed"), *aff'd,* 84 F.4th 686 (7th Cir. 2023). Robinson's failure to establish that any vacant positions existed is the "fatal flaw" in his argument that IDHS failed to accommodate him by not reassigning him to a different position. *Dunderdale*, 807 F.3d at 856.

### B. Interactive Process

Robinson also argues that IDHS failed to engage him in an interactive process to determine alternative reasonable accommodations for him. [67] at 10. After an employee informs the employer of a disability, the ADA requires "the employer to engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005) (quoting *Gile v. United Airlines, Inc.,* 213 F.3d 365, 373 (7th Cir.2000)). "If this process fails to lead to reasonable accommodation of the disabled employee's limitations, responsibility will lie with the party that caused the breakdown." *Id.*

"Failure of the interactive process is not an independent basis for liability under the ADA." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1059 n.1 (7th Cir. 2014) (citing *Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir.2001)). To state a claim, "a plaintiff must allege that the employer's failure to engage in an interactive process resulted in a failure to identify an appropriate accommodation for the qualified individual." *Rehling v. City of Chicago*, 207 F.3d 1009, 1016 (7th Cir. 2000), *amended* (Apr. 4, 2000).

There is no "hard and fast rule" to determine which party is responsible for a breakdown in the interactive process. *Beck v. U. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996). To determine responsibility for the breakdown in the interactive process, courts "look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary." *Id.* "A party that obstructs

or delays the interactive process is not acting in good faith," and a "party that fails to communicate, by way of initiation or response, may also be acting in bad faith." *Id.* "Typically, the burden of 'exploring' reasonable accommodation lies with the employer." *Jackson*, 414 F.3d at 813.

Robinson argues that IDHS failed to engage him in an interactive process after denying his request for reasonable accommodation. [67] at 10. Robinson argues that further interactive discussions between IDHS and Robinson could have identified additional reasonable accommodations like changes to COVID-19 safety protocols and more robust PPE. [67] at 11. Robinson testified that had such accommodations been put in place, he would have discussed with his doctor whether he could return to work. [66] at ¶ 26. IDHS blames Robinson for the breakdown in the interactive process, arguing that "[i]f Plaintiff would have communicated with IDHS as it requested in its July 27, 2020, letter, Plaintiff and IDHS would have been able to discuss" the new safety protocols and PPE in place at ELC. [57] at 9.

But the record shows that Robinson *did* communicate with IDHS after July 27, 2020. On July 29, 2020, after IDHS's July 27 letter and July 28 denial of Robinson's accommodation request, Robinson emailed IDHS and stated his concerns about limited PPE and lack of COVID-19 testing for employees. *See* [66-4] at 2. Robinson also stated that he had retained a lawyer and that further communications should involve his lawyer. *Id.* Nothing in the record suggests that IDHS responded to this email or otherwise contacted Robinson to discuss potential alternative accommodations, address his concerns about PPE and COVID-19 testing, or seek

11

further information about his disability. This record suggests that IDHS may have been responsible for the breakdown in the interactive process.

However, Robinson's claim still fails because he has produced no evidence that would permit a reasonable jury to conclude that he would have been able to perform the duties of an MHT with new COVID-19 safety protocols and more robust PPE. "In response to an employer's motion for summary judgment, it is the plaintiff's burden to produce evidence sufficient to permit a jury to conclude that she would have been able to perform the essential functions of her job with a reasonable accommodation." *Wheatley v. Factory Card and Party Outlet*, 826 F.3d 412, 418 (7th Cir. 2016) (quoting *Basden v. Professional Transp. Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013)). The Seventh Circuit has found that a plaintiff's mere hope that proposed accommodations would enable them to work is insufficient evidence to permit a jury to conclude that the plaintiff could perform the essential functions of the job with the proposed reasonable accommodation. *Id.* (citing *Basden*, 714 F.3d 1034, 1037-38). The Seventh Circuit has also found affidavits from medical providers to be insufficient evidence where the medical provider's opinion was too conclusory, speculative, or uninformative. *Id.* (citing *Weigel v. Target Stores*, 122 F.3d 461, 468-69 (7th Cir. 1997); *Stern v. St. Anthony's Health Center*, 788 F.3d 276 (7th Cir. 2015)).

The only evidence Robinson provides is his own deposition testimony that "had Defendant issued more substantial PPE and if other COVID-19 protective procedures were put in place, he would have discussed that with his doctor and he may have been able to return to work." [66] at ¶ 26. Robinson fails to provide any "non-speculative,

12

non-conclusory evidence that [his] proposed accommodation would have allowed him to adequately perform his job." *Wheatley*, 826 F.3d at 419. Robinson's "mere hope or belief, unsupported by evidence supporting those conclusions, is insufficient to permit a jury to conclude that [he] would have been able to perform the essential functions of [his] job with a reasonable accommodation." *Id.* at 421.

Robinson has provided no evidence permitting the conclusion that, even if IDHS was responsible for the interactive process ending, that he was a qualified individual under the ADA. IDHS is entitled to summary judgment.

## CONCLUSION

For the stated reasons, IDHS's motion for summary judgment [54] [55] [56] [57] is granted. The Clerk is directed to enter judgment in Defendant's favor and against Plaintiff and terminate the case.

E N T E R:

Dated: August 27, 2025

MARY M. ROWLAND
United States District Judge

13